UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TAMMY S. C.,

      **Plaintiff,**

      **v.**

COMMISSIONER OF SOCIAL
SECURITY,

      **Defendant.**

**Civil Action 2:25-cv-524**
**Judge James L. Graham**
**Magistrate Judge Chelsey M. Vascura**

## REPORT AND RECOMMENDATION

Plaintiff, Tammy S. C. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security ("Commissioner") denying her

applications for a period of disability and disability insurance benefits ("DIB") and supplemental

security income benefits ("SSI"). This matter is before the undersigned for a Report and

Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's

Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the

administrative record (ECF No. 7).  For the reasons that follow, it is **RECOMMENDED** that

Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be

**AFFIRMED**.

### I.      BACKGROUND

Plaintiff filed her DIB and SSI applications in September 2021, alleging that she became

disabled beginning April 19, 2021. (R. at 269–75, 276–82.) After Plaintiff's applications were

denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held telephonic

hearings on June 21, 2023, and May 8, 2024, at which Plaintiff, who was represented by counsel, appeared and testified. (*Id.* at 52–68, 69–94.) A vocational expert ("VE") also appeared and testified at both hearings. On June 14, 2024, the ALJ issued an unfavorable determination, which became final on March 11, 2025, when the Appeals Council declined review. (R. at 27–51, 1–7.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ reversibly erred when evaluating medical opinion evidence from a nurse practitioner, NP Reeves. (Pl.'s Statement of Errors 9–12 ECF No. 10.) Defendant correctly contends that this contention lack merit. (Def.'s Mem. in Opp'n 2–10, ECF No. 13.)

## II.     THE ALJ'S DECISION

The ALJ issued the unfavorable determination on June 14, 2024. (R. at 27–51.) The ALJ initially concluded that Plaintiff met the insured status requirements of the Social Security Act

through December 31, 2023. (*Id.* at 32.) At step one of the sequential evaluation process,[1] the

ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset

date of April 19, 2021. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe

medically determinable impairments: lumbar degenerative disc disease; obesity; arthritis of the

sacroiliac joints, symphysis pubis, and hips. (*Id.* at 33.) At step three, the ALJ found that Plaintiff

did not have an impairment or combination of impairments that met or medically equaled one of

the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 37.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) except that she can stand and walk four hours out of
> an eight hour workday; occasionally push, pull, or operate foot controls with the

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

right lower extremity; occasionally climb ramps and stairs, stoop, or crouch; never climb ladders, ropes, and scaffolds; never kneel, crawl, or working around hazards such as unprotected heights, exposure to moving mechanical parts, or commercial driving.

(*Id*.)

At step four, the ALJ relied on VE's testimony to determine that Plaintiff was unable to perform her past relevant work. (*Id*. at 42.) Relying on VE's testimony again at step five, the ALJ determined that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of price marker, mail clerk, and copy machine operator. (*Id*. at 42–43.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 44)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of*

4

*Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

As explained above, Plaintiff contends that the ALJ committed reversible error when evaluating a medical opinion from her nurse practitioner, NP Reeves. (Pl.'s Statement of Errors 9–12, ECF No. 10.) Specifically, Plaintiff contends that the ALJ failed to adequately explain the consistency factor when evaluating the persuasiveness of NP Reeves' opinion. (*Id*.) The undersigned concludes this contention lacks merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[3] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

---

[3] Because Plaintiff's applications were filed in 2021, they are subject to regulations governing applications filed after March 27, 2017.

administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R.
§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering
those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with
the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical
source has familiarity with the other evidence in the claim or an understanding of [the SSA's]
disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5);
416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most
important, and the ALJ must explain how they were considered. *Id.* And even though an ALJ
may discuss how he or she evaluated the other factors, he or she is not generally required to do
so. *Id*.

Here, NP Reeves completed a two-page provider statement form on March 18, 2024. (R.
at 1245–46.) The ALJ discussed it as follows:

> This form endorses marked limitations (less than two hours sitting, standing and
> walking each per day, multiple ten-minute breaks, off task behavior, and absences
> of more than four days per month). This form is poorly supported, as the author
> predominantly references the c*laimant's subjectively reported pain complaints
> which, as discussed above regarding the SSR 16-3p factors, are in themselves not
> fully consistent with the record.* She also indicates that she has observed the patient
> moving to offload weight, but this is seen at only two visits in 2024 (compare 35F/6
> and Id. at 10, indicating some off-loading, with 35F/14, indicating she was healthy
> appearing, in no acute distress, ambulating without assistance and able to get up
> and down from the exam table without assistance, among other things). She also
> cites right leg weakness, but in her own exams the claimant is indicated to have
> normal tone and motor strength as well as gait and station (35F/6, 10,15). She
> indicates no assistive devices are used, which appears inconsistent with the ability
> to stand and walk only two hours each in a day. She indicates only 10 percent time
> off task behavior, but if she could only sit, stand and walk a total of six hours, that
> means that at least two hours during a working day she would presumably be lying
> down and off task. She also indicates the claimant could only walk for two hours
> total but separately indicates she would have to walk for ten minutes every ten
> minutes, which suggests she would be walking 50% of the time over the course of
> a day. This is internally inconsistent. She also indicates that she did not see the
> patient until August 21, 2023, but indicates these limits extend back to March 2021
> after a fall followed by the end of the claimant's job, which appears to be based

only on the claimant's reports. For the foregoing reasons, this form is poorly supported by the evidence cited on the form itself and by reference to the exams performed by this provider. While the provider did observe some pain behaviors in early 2024, and prior visits indicated some findings such as tenderness and limitations with range of motion, I considered the claimant's pain and these findings in adopting a reduced range of light work. This source does a poor job explaining why these findings correspond to the limitations she endorses. *These opinions are also inconsistent with the collateral record as discussed above regarding the claimant's subjective reports and the summary of medical evidence.* Therefore, these opinions are not persuasive.

(*Id*. at 41–42) (emphasis added).

As this discussion demonstrates, the ALJ determined that NP Reeves' opinions lacked support for a variety of reasons, including that they were not substantiated by her own treatment records. For instance, NP Reeves indicated that her opinions were based on Plaintiff off-loading her weight, but her examination notes only twice documented Plaintiff off-loading her weight and documented that during another visit Plaintiff appeared healthy, was in no acute distress, ambulated independently, and got on and off an examination table without assistance. (*Id*.) Similarly, NP Reeves cited right-sided muscle weakness in her opinion even though her examination notes documented normal tone, motor strength, gait, and station. (*Id*.) The ALJ also determined that NP Reeves' opinion lacked support because it was internally inconsistent. (*Id*.) For example, NP Reeves opined that Plaintiff was limited to walking only two hours a day but also opined that Plaintiff would need to walk for ten minutes every ten minutes. (*Id*.) The ALJ further noted that although NP Reeves did not begin treating Plaintiff until August 2023, she opined that her opined limitations extended back to March 2021, apparently based only on Plaintiff's reports.

Plaintiff does not challenge this supportability analysis and discussion. Instead, Plaintiff argues that the ALJ inadequately articulated the consistency factor. But contrary to Plaintiff's contentions, this is not a case in which the ALJ simply gestured to prior discussions of the

evidence. Rather, as the discussion above demonstrates, the ALJ twice incorporated her assessment of Plaintiff's subjective symptoms under SSR 16-3p and made it clear that opinions based on subjective complaints that were inconsistent with the record were also inconsistent with the record. (R. at 41–42.) That explanation sufficiently addressed the consistency factor in this instance.

The undersigned also finds no error in the ALJ's subjective symptom assessment. When discussing the SSR 16-3p factors,[4] the ALJ determined that Plaintiff's allegations of disabling symptoms were not consistent with imaging findings. (*Id*. at 39.) The ALJ noted that one provider indicated in July 2021 that imaging abnormalities did "'not seem to be in correlation with the amount of […] back pain [Plaintiff] is having." (*Id*. at 39 (citing R. at 811).) The ALJ also noted that even though later imaging showed that Plaintiff had severe arthritic changes in her symphysis pubis, Plaintiff nevertheless retained full bilateral lower extremity strength. (*Id*. at 39 (citing R. at 1049–50).) Moreover, the ALJ noted that in September 2022, imaging of Plaintiff's lumbar spine was described as being relatively stable since 2018. (*Id*. at (citing R. at 982).)

---

[4] When evaluating the "intensity, persistence, and limiting effects of an individual's symptoms," an ALJ must consider all available evidence from medical and nonmedical sources including medical opinions. 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1). In addition, SSR 16–3p sets forth seven factors that an ALJ will consider when performing this subjective symptom assessment: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 8) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16–3p, 2017 WL 5180304 at *7–8. *See also* 20 C.F.R. § 404.1529(c)(3)(i)–(vii).

The ALJ further determined that Plaintiff's subjective symptoms were not consistent with physical examination findings. (*Id*. at 39.) The ALJ explained that Plaintiff's physical examinations were "primarily normal other than some variable tenderness to palpitation and, more rarely, slightly decreased strength." (*Id*.) The record supports this explanation. During an April 2021 examination, Plaintiff had mild tenderness to palpation over the midline of her lumbar spine, but intact sensation and 5/5 strength in her upper and lower bilateral extremities. (*Id*. at 801.) In May 2021, Plaintiff had moderate range of motion restrictions in her lumbar areas. (*Id*. at 691.) In July 2021, Plaintiff had moderate pain to palpation but intact sensation and 5/5 strength in her lower extremities. (*Id*. at 813.) In April and July 2022, Plaintiff had lower lumbar tenderness with palpitation but a normal range of motion. (*Id*. at 833, 922.) And although Plaintiff's straight leg raise test was positive on the right in May 2022, her straight leg raise tests were negative bilaterally at other appointments in 2021 and 2023 (*Id*. at 884, 886, 972, 691, 813, 1054, 1130.) Examiners also regularly noted that Plaintiff's gait was intact, normal, relatively normal, or not antalgic (*Id*. at 618, 690, 813, 979, 1140, 1146, 1254, 1259, 690.)

The ALJ also determined that Plaintiff's treatment history undercut her subjective symptoms. (*Id*.) The ALJ explained that although Plaintiff did not always report that she had "great success" with her treatments—which included pain medications, injections, and other modalities—providers regularly described her as being in no distress or in no acute distress. (*Id*.) Substantial evidence supports this explanation because providers regularly documented such observations. (*Id*. at 681, 759, 762, 764, 858, 918, 924, 996, 1039, 1049, 1091, 1139, 1145, 1173, 1254.) The ALJ also accurately noted that in August 2021 Plaintiff reported that her use of herbal supplements for pain relief was "working well" and expressed a readiness to return to full-time work. (*Id*. at 39 (citing R. at 816).) Further, the ALJ correctly noted that Plaintiff did not

typically report side effects from medications aside from Zoloft, which was consequently discontinued. (*Id*. at 39, 1030–31).)

The ALJ additionally determined that Plaintiff's subjective symptoms were undercut by her inconsistent statements. (*Id*. at 39.) The ALJ noted that Plaintiff testified that injections provided back pain relief for about one month but told a pain management provider that she had experienced 70-80% relief for two months after an injection. (*Id*. at 39 (citing R. at 57, 1219).) The ALJ also noted that Plaintiff gave varying accounts of how she was injured, at times stating that she was crushed by an army car, while at other times reporting that she had been injured when a golf cart flipped over in 2017. (*Id*. (citing R. at 689, 792).) The ALJ noted too that Plaintiff's 2017 emergency room imaging was unremarkable, and that she was discharged from the emergency room the same day. (*Id*. at 39, 767–75.)

Finally, the ALJ determined that Plaintiff's allegations of disabling symptoms were inconsistent with her statements about her activities of daily living. Substantial evidence supports that determination. Although Plaintiff reported that she had difficulty caring for herself and climbing stairs, she also reported having no difficulty dressing, bathing, doing errands alone, and walking without restrictions. (*Id*. (citing R. at 1249, 1253).)

In short, the ALJ adequately explained the consistency factors in this instance. The ALJ's subjective symptom assessment included a detailed discussion of the record evidence. The ALJ explicitly incorporated that subjective symptom assessment into her evaluation of NP Reeves' opinion and thus provided a logical bridge between her detailed discussion of the evidence and the conclusions she reached about the supportability and consistency of NP Reeves' opinion. Accordingly, Plaintiff has not demonstrated reversible error.

## V.  RECOMMENDED DISPOSITION

Accordingly, for all the reasons contained herein, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

11

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE